Good morning. Good morning. May it please the Court, my name is Andrew Mead, Student Counsel for Appellant Mr. Delano Wright. I plan to reserve two minutes of my time for rebuttal, but will keep my own time. As a preliminary matter, defendants concede that Wright is entitled to trial for his excessive force and deliberate indifference claims in light of the recent Supreme Court case Wilkins v. Gaddy, which held- The government concedes that point, does it not? Yes, Your Honor. So you got that one won. Way to go. Thank you. I'll turn to Wright's retaliation claims and his motion for the appointment of counsel. Two weeks after Wright filed his grievance alleging excessive force, defendants threatened to confiscate his personal property and place him in the hole if he didn't recant these allegations. After he ultimately pursued his grievance, he was transferred to a higher security prison. Both the initial threat and the prison transfer violated his First Amendment rights. In the prison context, pursuant to Rhodes v. Robinson, a retaliation claim requires showing, first, an adverse action, second, it is motivated by the prisoner's protected conduct, third, a chilling effect, and fourth, no legitimate penological objective. Here, Wright has presented sufficient evidence for each and every element for both the initial threat and the prison transfer. With respect to the initial threat, that wasn't even dealt with in the district court. Isn't that right? Correct, Your Honor. The district court did not analyze Defendant Davis or Johnson's threat, despite the wording in Wright's deposition in which he states that Davis told him, if you don't take back what you're saying about my officers, you're going to the hole. If you get on camera saying this, your property is going to get lost. You're going to have to buy that all over again. This constitutes an adverse action because a threat alone, pursuant to Brodheim v. Cry, constitutes an adverse action if it's used to chill First Amendment activity, such as filing a prison grievance. The district court's failure to analyze it warrants a reversal because there are issues of fact as to whether or not that would chill a reasonable person's First Amendment activity. Counsel, you know, I tend to be receptive to your argument about the threat. At least I'd like to hear from the government. But it does sound like sort of a dicey place to file a grievance. They say, if you don't withdraw your grievance, all these bad things will happen. But I really didn't understand. So I want to give you a chance to argue it on the transfer to the other psychiatric prison. Because it looked to me like all the officers said they didn't have anything to do about it with it. Plus, there was direct evidence that someone else, someone involved in medical or psychiatry, had made the decision. Some other person, not a defendant, made the decision on the transfer. And I didn't see any evidence that that was influenced by the defendants. So I didn't see causation on that. And I wasn't sure why we should be talking about that. Your Honor, Wright doesn't have any direct evidence that the defendants themselves, either Defendant Johnson or Davis, themselves sat on the reclassification committee that made the decision to transfer him. However, he has presented substantial circumstantial evidence that created issues of fact regarding that transfer's legitimacy. My question is, how is it circumstantial evidence? I realize you have an argument about proximity and time. But how can that be substantial circumstantial evidence when there is direct evidence that someone else made the decision? Well, Your Honor, Wright has direct evidence that Davis and Johnson both knew of the grievance. And the fact that he was at the prison for four years taking the same sleep medication, which is the government's purported justification for that transfer, creates an inference that the timing of the transfer was, in fact, caused by the defendants who knew about his grievance. The committee reclassification chairman, W.J. Rice, stated that a prison medical official recommended Wright for the transfer. But this prison official was not named and did not supply any supporting medical evidence that would justify this transfer decision. Furthermore, once Wright was ultimately transferred to High Desert Prison, he was told he did not meet the medical justification for that transfer and was ultimately transferred back to Calipatria Prison. The fact that the defendants purported reason for the transfer turned out to be, at least there are issues of fact that this reason was pretextual, create issues of fact that the defendants may have influenced that decision. And this court in Bruce v. Yilts noted that a prisoner who was classified as a gang member in retaliation for filing grievances, the court held that their claim could go forward even though defendants themselves did not necessarily sit on that gang validation committee. Here we have the same situation where Wright was transferred after filing a grievance, being in Calipatria Prison for four years, taking the same medication, and that only after filing a grievance was he transferred to a different prison. The whole record paints a picture of Wright being attacked without provocation, that when he brought his grievance to the prison guards, he was threatened and told to recant those allegations, and that ultimately when he pursued the grievance, he was transferred. The prison transfer itself can't be looked at in isolation, and the defendants' concession that Wright had potentially issues of fact regarding whether or not that attack occurred creates a substantial inference that in fact the defendants had motivation to get him to cover up his grievance and to transfer him as punishment for filing that grievance. On what standard should we review the district court's decision? This was on summary judgment. Was your client counseled at the time that the summary judgment was filed by the State? No, Your Honor. Wright was a pro se inmate plaintiff, and in this Court's decision in Thomas v. Ponder, pro se inmates are not held to the strict rules of summary judgment. However, as in any summary judgment proceeding, all reasonable inferences must be made in favor of Wright, and here we have genuine factual disputes over the wording of the threat that Defendant Davis used, as well as whether or not the defendants themselves influenced the decision to transfer Wright. Where in the record could we find the reference that you made a minute ago that an unknown person within the prison system had recommended the transfer? Where is that in the excerpts of records? That is in Wright's or, excuse me, W.J. Price's declaration, and that is shown. Excuse me one moment. Is shown at pages, it's 138 and 139 of the record. That's in the records of record? The supplemental excerpts of record that were originally set forth, submitted before the Court. 138, 139, right? Yes, Your Honor. Thank you. And the fact that defendants have not put forth any medical justification aside from this unnamed medical staff person does not shift the burden, arguably, to Wright to create issues of fact because they failed to remove any issues of fact or failed to establish that no issues of fact existed as to whether or not that transfer was legitimate. Turning to Wright's motion for appointment of counsel, in light of the defendant's concession and changed circumstances regarding Wright's claim, as well as the fact that the District Court did not analyze both factors necessary to determine whether exceptional circumstances were present, the District Court's order denying Wright's motion for appointment of counsel should be reversed and Wright should have the opportunity to request the appointment of counsel again. You're arguing that the District Court understood the correct legal standard but didn't apply it. Is that correct? Essentially, the District Court did articulate that it did need to consider both factors, but no, did not analyze each factor. And pursuant to Wigand v. Look, the District Court must provide an explanation for why it's denying a motion for appointment of counsel. And here, the two factors the District Court must consider are the likelihood of success and the plaintiff's ability to articulate their claims pro se. And here, while the District Court listed the correct standard,  given the defendant's concession that Wright's excessive force claims have issues of fact to be determined by a jury, the failure to analyze this prong of the motion for appointment of counsel is especially telling because had it analyzed that prong of the test, it would have found exceptional circumstances were present. Therefore, Wright as a pro se plaintiff is entitled to a liberal construction of his pleadings and motion papers and the fact that this motion was denied further bolsters Wright's claims in terms of his motions. Admittedly, pro se litigants have some, there's some leniency shown on pleadings. But does it change the burden of proof, the requirement that he come forward with evidence to rebut the moving party's evidence? In other words, say he didn't file any response at all. He'd still be stuck with a problem, would he not? Your Honor, the plaintiff ultimately carries the burden to show that issues of fact are present whether or not they're pro se or not. But here Wright did not, defendants contend that Wright waived claims with respect to his threat. But Wright referenced in his opposition to the defendant's motion for summary judgment, he referenced specifically Davis's intimidating tactics and Johnson's intimidating tactics. I'm sorry. You're dealing with the overall and I understand that. But I'm talking specifically in this case about the motion for the appointment of counsel on that aspect. What was he obliged to come forward with? How did the district court get it wrong? Was it based on just the legal standard? The court did not articulate its reasoning on this? Is that all we're talking about on this point? Essentially, yes, Your Honor. The fact that the district court did not analyze both factors warrants a reversal because that alone constitutes abuse of discretion. I was referencing that had the district court analyzed these factors, given Wright's verified complaint, it would have found a likelihood of success on the merits. And I see that. Do you want to save some time for rebuttal? Yes, Your Honor. Thank you very much. Okay. Very good. We'll hear then from the Department of Corrections, Ms. Desjardins. May it please the Court, Michelle Desjardins for the defendants. I just want to say good job. You did a good job. The Court should affirm the district court's decision to grant summary judgment on the retaliation claim because plaintiff did not show that there was a triable issue of material fact on the elements of the retaliation claim. He abandoned that claim on summary judgment. Which claim? Both retaliation claims, the transfer and the threat claim? Yes, Your Honor. Both claims. He said on the he addressed this on the first page of his opposition to the motion for summary judgment when he said specifically that he was opposing defendant's motion for summary judgment on the Eighth Amendment excessive force and failure to protect claims as to Grady, Gasconia, Guzman, and Hawks. Now, defendants Davis and Johnson were the defendants who were allegedly involved in the retaliation claim. So he provided no evidence whatsoever to contest the evidence that the defendants set forth undermining every element of the retaliation claim. As student counsel indicated, plaintiff was required to show that a state actor took some adverse action against him because of his conduct, his protected conduct, and that this action chilled his exercise of his First Amendment rights and that the action did not reasonably advance a legitimate correctional goal. Addressing first the alleged threat, there was no adverse action. A naked threat without more is not an adverse action. Isn't it isn't that a contested issue of fact? In other words, isn't the extent of the threat, the whether it is naked threat alone or whether it's something more substantial, isn't that a contested issue of fact? It's a question of degree which would be quintessentially factual. Plaintiff didn't contest anything with respect to the adverse action by not opposing it in his motion, in his opposition to the motion. Also, defendants presented evidence that it wasn't a threat. It was just an indication by Lieutenant Davis as to the consequences of making an allegation of criminal conduct or a serious allegation of staff misconduct. Under the regulations, when such misconduct is being investigated, it is routine to place an inmate in administrative segregation. This is done if it's a staff complaint. It's done if an inmate alleges that another inmate assaulted him. It's done to protect the inmate. But just can I roll you back for a second to the waiver issue? You're claiming that the appellant here dropped the issue, but isn't it the fact that the issue of the threats was in his brief? It may not have been a heading. It may not have been explicit, but that it was in his brief. He talks about the videotape, the misconduct issue. He talks, I mean, the videotaping issue. He talks about administrative segregation, not in the way that a lawyer would, but it's in the body of his brief. Yes, Your Honor. It is in the body of the brief, but he makes clear in the first page of his opposition that he is not – that he is only addressing his Eighth Amendment claims. And not what was essentially a First Amendment claim. Yes, Your Honor. In fact, he never actually pleads a First Amendment claim. I thought he's – is he pro se at this time? Yes, Your Honor. He's pro se. So he files the brief pro se, and I guess if he says some things in the body of his brief, there would be a pretty strong argument in my mind that he didn't waive those issues. You know, because he said Eighth Amendment on the first page, didn't say First Amendment. If he's grumbling throughout his brief about threats against him that would chill his writing of grievances, probably he deserves to have a non-waiver finding in a pro se context. That's what I would ask you. Is that wrong? Your Honor, I would say even assuming that he attempted to address this in his opposition, he still failed to create a tribal issue of fact as to each prong of a retaliation claim. Well, does there have to be actual action? In other words, would he have to have carried through on his threat under your reading of the case law in order for the cause of action to be stated? No, Your Honor. I think it's clear in Brodheim that you don't have to carry through a threat. If there's a showing that the threat chilled his exercise of his First Amendment rights, that would have been enough under Brodheim. There is no allegation. There is no showing of chilling here. And I guess that would get back to Judge Gould's point. This was a pro se complaint, liberally construed. If we find in the body of this complaint or in the response to the summary judgment, language that could be liberally construed to say that his speech was chilled, he was concerned about expressing himself and trying to get relief, that that would satisfy the prong that you're speaking of? There would have to be some statement, some evidence presented, some allegation of this element. You can't completely do away with an element simply because the plaintiff is proceeding in pro se, and that would be eliminating the chilling element altogether. So from your perspective, unless we can find that element fled in here, we can't, in effect, create it for him? That's correct, Your Honor. Okay. But that is not the only element that he failed to demonstrate. There was a tribal issue of fact regarding. He also failed to demonstrate that the actions of Defendants Johnson and Davis did not advance a legitimate penological goal. As I indicated earlier, they were simply informing him of what will happen once an allegation of staff misconduct is made. You go to administrative segregation. And, in fact, your property is temporarily taken away when you go to administrative segregation. You have the right to take very little personal property with you. So that would have been a statement. You're going to go to administrative segregation. Your property is going to be taken away from you. It is returned once you are returned to the general population. Does it matter that in the context, someone who is filing a complaint about officers, a prisoner who is filing a complaint against officers, would not regard the statement, you're going to go into administrative segregation and your property is going to be taken away, as a threat? Your Honor, it was not meant as a threat. This is routine. This is what every inmate would expect to face at some point during their incarceration. It's placement in the men's room. So the question is that, so is our test a subjective one at this point? Which is that he – is it enough if he subjectively believed that this was all in retaliation for him filing a grievance rather than an appropriate resolution of these matters? I mean, isn't that a subjective test at this stage? I believe it's an objective test. Is there a legitimate penological ground? The defendants set forth evidence indicating that this was the legitimate penological ground. A plaintiff did not set forth any evidence to rebut that. That was his burden to do. And this Court in Pratt v. Roland stated that when the State sets forth a legitimate penological ground, that is entitled to deference by the Court. I'd like your response to this. So I'm looking at what is described as page 4A of the complaint. This is a handwritten complaint here, and it's hard to read it on occasion. It says that the alleged Correctional Lieutenant R. Davis and Correctional Sergeant R. Johnson abused their authority by using coercion and intimidating tactics to get myself and inmate Weathers to recant the truth concerning the 11-2203 incident and use it against us as an attempt to cover up his officer's action. I was then transferred to a higher prison and so on. Is that insufficient to, again, liberally construed to meet the element to which you made reference? It wouldn't be on a motion to dismiss. On a motion for summary judgment, once the defendant set forth evidence showing that there is no tribal issue of fact on the five elements of retaliation, he has to go further than that, and he has to demonstrate that there is actually a tribal issue of fact on all five elements, and he failed to do so here. Even though in this case he's entitled to, as the non-moving party, to have facts construed in his favor, generally speaking. Yes, he is entitled to have it construed in his favor, but there's an utter failure on his part to even address it and to address the evidence set forth by the defendants in their declarations that state this was not done for any retaliatory purpose. He admits that Sergeant Johnson didn't say anything at all to him, that it was Davis, in fact, that said these things. So even given the leniency towards pro se inmates, they still have an obligation on summary judgment to articulate and provide evidence on the elements of a retaliation claim. If I may turn to the claim that he was transferred in retaliation for his allegations of staff misconduct, there's absolutely nothing in the record that demonstrates that either Defendant Davis or Johnson had anything to do with the transfer. The evidence shows that, and he even admits that they are not in a position of power, in a position to transfer him, to recommend his transfer. A transfer decision is made by the Institutional Classification Committee. And in this case, the record shows that a psychiatrist, it wasn't regarding a sleeping medication, there was a diagnosis of a psychiatric problem requiring a higher level of psychiatric care. It's called triple CMS. But was there any indication that this psychiatric problem appeared at this time and had never before existed? I don't think that's in the record, but there is an indication that this inmate has had psychiatric problems over the years, and psychiatric problems increase and decrease. They're constantly being assessed. But what I'm saying is that if this was sort of background noise to his incarceration, why then, why was he transferred after this incident? What had gone on that would lead to the transfer at this particular moment? There's nothing in the record, Your Honor, as to his psychiatric condition, why at this point it was determined that he should go to triple CMS. But to infer that some officers could influence psychiatric staff to make some wild diagnosis to get somebody else to recommend a transfer and then get somebody else to approve a transfer is just completely far-fetched. And he does not present any evidence on his opposition to the motion for summary judgment that any of these things occurred. Could you comment on counsel's statement that in SCR 138, 139, there was a reference to someone in the prison staff having encouraged, asked for this transfer on behalf of Mr. Wright? I believe that's incorrect, Your Honor. What is in the record is, and I believe this is what student counsel was referring to, there is what is called a chrono, sort of a note to file, if you will, that indicates a psychiatrist has recommended him for triple CMS. We don't have CMS at Calipatria, triple CMS at Calipatria. He needs to go to a facility that can meet his psychiatric needs. Therefore, he's going to be transferred to the Institutional Classification Committee for an evaluation as to an appropriate institution where his psychiatric needs can be met. The declarant was Powell, and I believe he was on the Institutional Classification Committee that relied on this chrono indicating he needed to be transferred. So is Mr. Powell or Dr. Powell, whoever it was, is the source that's referred to in 138, 139? Is that correct? Yes, Your Honor. Okay. Thank you. Well, he's the source that referred, the initial source, I suppose, would be the psychiatrist who evaluated him. Yes. All right. So going back to the transfer decision, there's absolutely no evidence that these defendants had anything to do with that. And so in the couple seconds I have left, let me address the failure to appoint counsel. Counsel is only appointed in extraordinary circumstances. Plaintiff did not demonstrate those types of circumstances here. He actually did quite a good job articulating his claims. And I see I'm out of time. Thank you for your presentation. We'll hear now again from Mr. Mead on rebuttal. Just a few points on rebuttal, Your Honor. First, to address the issue of the waiver, defendant or, excuse me, Wright specifically referenced the intimidating tactics used in his opposition to the motion for summary judgment. He attached both Johnson and Davis' declaration to that opposition motion, and he attached his own deposition, which contained all the evidence necessary to create issues of fact regarding that threat. Additionally, defendant's contention that Wright failed to show there was no legitimate penological objective is unwarranted. First of all, the issues of fact regarding the wording of the threat prevent summary judgment because there would be no legitimate penological objective to threaten Wright to place him in the hole and take away his property as worded by defendant Davis in Wright's deposition. However, even if the court found a legitimate penological objective to place Wright in the hole, the defendant hasn't offered any reason for why he would have been threatened to have his personal property taken away. Therefore, summary judgment on this issue would be inappropriate. Next, returning to the issue of the transfer, the fact that Wright doesn't have direct evidence doesn't preclude summary judgment that defendants may have influenced and caused that transfer. An unnamed medical official, a psychiatrist perhaps, recommended Wright for the transfer. However, once Wright was ultimately transferred to high desert security, high desert prison, he was told he didn't meet the medical criteria. This creates an inference that this explanation was, in fact, pretextual and that the real reason for the transfer, which occurred just six weeks after he filed his grievance, having been at Calipatria Prison for four years without interruption, was, in fact, a retaliatory purpose. Where is the pretextual point that you make in the record where he was told at the new facility  That occurs in Wright's deposition, Your Honor. It appears on page 227 of the supplemental excerpts of record as well as page 215 where he was told. It's unclear when exactly he was told upon arriving at the prison that he didn't meet this triple CMS classification. However, the fact that he was told the medical justification was unwarranted creates issues of fact regarding this transfer. Did he remain at the new facility or was he transferred back? He remained at the new facility for approximately a little over one year and then was transferred back to Calipatria. Thank you. Unless my colleagues have questions, we thank you both. You did a very nice job. Where do you go to school? UC Hastings. Very good. Well, congratulations. You've done a fine job. You can be pleased with your performance. Thank you. I think the counsel for the State would also agree. Oh, yes. You made a job offer, actually. Indeed. The case of Wright v. Department of Corrections is submitted.
judges: Gertner, Gould, Smith M.